

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

APR 1 4 2011
APR 14 2011
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 CR 700 |
| v. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| BYRON LANE | ) | |
| | ) | |

### PLEA DECLARATION

Defendant, BYRON LANE, after extensive consultation with his attorney,

MIANGEL C. CODY, acknowledges and states the following:

1.      Mr. Lane has been indicted with using an interstate

facility with the intent that murder be committed, in violation of Title 18, United

States Code, Section 1958(a) (Counts One through Three), and with being a felon in

possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1)

(Count Four). The indictment also contains a forfeiture allegation.

2.      Mr. Lane has read the charges against him contained in the indictment,

and those charges have been fully explained to him by his attorney.

3.      Mr. Lane fully understands the nature and elements of the crimes with

which he has been charged.

1

## Factual Basis

4.     Mr. Lane agrees to enter a voluntary plea of guilty to the following counts

of the indictment: Count One, which charges him with using an interstate facility with

the intent that murder be committed, in violation of Title 18, United States Code, Section

1958(a); and Count Four, which charges defendant with being a felon in possession of a

firearm, in violation of Title 18, United States Code, Section 922(g)(1). In pleading guilty,

defendant admits the following facts and that those facts establish his guilt beyond a

reasonable doubt:

a.     Factual Basis as to Count One:

Mr. Lane admits that he was the target of a government sting operation in which

an undercover law enforcement officer initiated contact with him (Lane) and solicited

Lane to murder a fictitious rival gang member.  More specifically, on August 5, 2010,

Lane met with an individual who, unbeknownst to him, was an undercover law

enforcement officer (the "UC"). During the meeting, the UC told Lane that he (the UC)

was running low on guns and had been "having problems" with rival gang members.

The UC told Lane that he had heard that Lane might be able to help him out with his

rivals. Lane acknowledged that he understood the UC to be asking Lane to murder a

rival gang member. Lane agreed to commit the murder of the UC's rival gang member,

in exchange for $1,200 and transportation to the murder.  Unbeknownst to Lane, the UC

was a government agent, and the Individual A (the purported murder target) was fictitious.

Then, on August 12, 2010, at approximately 5:03 p.m., the UC had a telephone conversation with Lane, who was using a cellular telephone operated on the Cricket network (the "Cricket phone"). During this conversation, the UC indicated that he wanted Individual A's murder to occur the following week. Lane agreed to perform the murder. Also during the conversation, the UC gave Lane the purported name of the proposed victim, Individual A, and the UC and Lane discussed the logistics of the murder.

Based upon these facts, Mr. Lane admits that on or about August 12, 2010, at approximately 5:03 p.m., in the Northern District of Illinois, Eastern Division, and elsewhere, he knowingly used a facility of interstate commerce, namely, a cellular telephone operated by Cricket, a cellular telephone service provider operating in interstate commerce, with the intent that a murder be committed, in violation of the laws of the State of Illinois, namely, the murder of fictitious Individual A, as consideration for a promise and agreement to pay a thing of pecuniary value, namely, approximately $1,200 in United States Currency, in violation of Title 18, United States Code, Section 1958(a).

b.    Factual Basis as to Count Four:

On or about August 19, 2010, in the Northern District of Illinois, Eastern Division, Mr. Lane, previously having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely, a Beretta model 92, 9mm caliber pistol, bearing serial number BER004497Z, which firearm had traveled in interstate commerce prior to defendant's possession of the firearm, in violation of Title 18, United States Code, Section 922(g)(1).

More specifically, on August 19, 2010, Lane had a Beretta pistol on his person when he met with the UC in the UC's vehicle. During the meeting, Lane pulled from his waistband area a Beretta model 92, 9mm caliber pistol, bearing serial number BER004497Z.  Shortly thereafter, Lane handed the Beretta pistol to the UC, who placed the firearm in a storage area of the vehicle.

Mr. Lane further admits that, prior to August 19, 2010, he had been convicted of a felony offense, punishable by imprisonment for a term exceeding one year.  In addition, Lane acknowledges that the evidence at trial would show the Beretta model 92 firearm was manufactured in Italy, and thus had traveled in interstate commerce prior to the time that he possessed it.

## Maximum  Statutory  Penalties

5.    Mr. Lane understands that the charges to which he is pleading guilty carry

4

the following statutory penalties:

    a.    Count One carries a maximum sentence of 10 years' imprisonment.
Count One also carries a maximum fine of $250,000. Mr. Lane further understands
that with respect to Count One the court also may impose a term of supervised release
of not more than three years.

    b.    Count Four carries a maximum sentence of 10 years' imprisonment.
Count Four also carries a maximum fine of $250,000. Defendant further understands
that with respect to Count Four, the judge also may impose a term of supervised
release of not more than three years.

    c.    In accord with Title 18, United States Code, Section 3013,
Mr. Lane understands that he will be assessed $100 on each count to which he has pled
guilty, in addition to any other penalty imposed.

    d.    Therefore, under the counts to which defendant is pleading guilty,
the total maximum sentence is 20 years' imprisonment. In addition, Mr. Lane is
subject to a total maximum fine of $500,000, a period of supervised release, and special
assessments totaling $200.

## Guidelines Calculations

    6.    Mr. Lane understands that in imposing sentence the Court will be guided
by the United States Sentencing Guidelines. The Sentencing Guidelines to be applied in

5

this case are those in effect at the time of sentencing. Mr. Lane understands that the

Sentencing Guidelines are advisory, not mandatory, and that the Guidelines are only

one of several factors listed under Title 18, United States Code, Section 3553(a). Mr.

Lane understands that the Court must consider the Guidelines in determining a

reasonable sentence that is "sufficient, but not greater than necessary" to comply with

the statutory goals of sentencing. He understands that the Probation Department will

conduct its own investigation, that the Court ultimately determines the facts and law

relevant to sentencing, and that the Court's determinations govern the final advisory

guideline calculation.

7.      Mr. Lane understands that the government may take the position that his

advisory guideline range is 108 to 135 months' imprisonment, based on an adjusted

offense level of 29 and a criminal history category III.

8.      Errors in calculations or interpretation of any guidelines or laws may be

corrected or amended by Mr. Lane prior to sentencing. He may correct these errors or

misinterpretations by a statement to the probation office or court setting forth the

disagreement as to the correct guidelines or laws and their application. Specifically, Mr.

Lane reserves the right to disagree with the government's guidelines calculation. Mr.

Lane also reserves the right to object to the Probation Office's guidelines calculation.

9.      Mr. Lane reserves the right to request a downward departure or variance

6

from the applicable guideline range on any grounds he deems appropriate. Specifically, Mr. Lane intends to seek a sentence that is below the advisory guideline range. The reasons will be discussed in a sentencing memorandum that will be filed with the Court after receiving the presentence investigation report and prior to the sentencing hearing. Mr. Lane understands that any decision to depart or vary from the applicable guidelines lies solely within the discretion of the Court.

## Trial Rights and Appellate Rights

10.     Mr. Lane understands that by pleading guilty he surrenders certain rights, including the following:

(a)     If defendant persisted in a plea of not guilty to the charge against her, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b)     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory

challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict his unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt, and that it was to consider each count of the indictment separately.

(c)     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

(d)     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. He would be under no obligation to do so, however, because he is presumed to be innocent and thus need not prove his innocence. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e)     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

11. Mr. Lane understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. By pleading guilty, Mr. Lane admits he is guilty and agrees that he should be found guilty. Mr. Lane's attorney has explained these rights to him, and the consequences of his waiver of these rights. Mr. Lane further understands that he is waiving all appellate issues that might have been available if he had exercised his right to trial.

<u>**Limitations and Consequences of this Plea Declaration**</u>

12. Mr. Lane understands that this plea declaration and accompanying plea resolve only Count One and Count Four of the indictment. It is Mr. Lane's profound (and hopefully realistic) hope that the government will choose to dismiss Count Two and Count Three at the time of his sentencing, but no binding or formal agreement exists between the parties to that effect. By this plea, Mr. Lane knowingly waives and forfeits any and all speedy trial objections or issues with respect to the remaining counts which might arise concerning a delay of resolution of those counts until the time of sentencing on Counts One and Four.

13. Mr. Lane understands that the United States Attorney's Office will inform the District Court and the United States Probation Office of the nature, scope, and extent of his conduct regarding these charges and related matters, including matters in aggravation and relevant to the issue of sentencing. Mr. Lane further understands that he will be able to present evidence in mitigation of his sentence.

14.     Mr. Lane understands that at the time of sentencing, the government and the defendant will be free to make their respective recommendations to the Court as they deem appropriate.

15.     Mr. Lane understands that the sentencing guidelines are no longer mandatory, and that this Court's decision as to what sentence constitutes a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a) may result in a sentence either within, greater, or less than the applicable sentencing guideline range.  Mr. Lane understands that the applicable sentencing guideline range is one factor which this Court is required to take into consideration under 18 U.S.C. § 3553(a)(4), along with the other required factors under § 3553(a).  Mr. Lane understands that, should the Court impose a sentence that is either within, greater, or less than the applicable sentencing guideline range, he will have no right to withdraw his guilty plea.

16.     Should this Court refuse to accept Mr. Lane's plea of guilty, this Plea Declaration shall become null and void and defendant will not be bound thereto.  It is the defendant's position that, should the Court decline to accept his plea, this Plea Declaration and the ensuing court proceedings are inadmissible in later court proceedings pursuant to Federal Rule of Evidence 410.

17.     Mr. Lane agrees that this Plea Declaration shall be filed and become part of the record of the case.

18.     Mr. Lane and his attorney acknowledge that no threats, promises, or

representations have been made, nor agreements reached, to induce him to plead guilty.

Mr. Lane further acknowledges that he has read this Plea Declaration and carefully

reviewed each provision with his attorney.

Signed this _14th_ day of April, 2011

_____
Byron Lane, Defendant

FEDERAL DEFENDER PROGRAM
Carol A. Brook,
Executive Director

By:_____          FEDERAL DEFENDER PROGRAM
MiAngel C. Cody                               55 East Monroe Street, Suite 2800
*Counsel for Byron Lane*                      Chicago, IL 60603    (312) 621-8348